E. J. Berger, Cristobal, Canal Zone, for plaintiffs.

Henry L. Newell, Balboa, Canal Zone, for defendants.

**Martin PASTRANA et al., Plaintiffs,**

v.

**M/V JANE D., her engines, tackles, boilers, etc., et al., Defendants.**

**Civ. No. 2800.**

District Court, Canal Zone Division of Cristobal.

March 27, 1968.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

CROWE, District Judge.

1. The plaintiffs are citizens and residents of the Republic of Columbia and each is over the age of twenty one years except Jorge Jiraldo who is presently 20 years of age and is represented by a guardian *ad litem*, E. J. Berger; the plaintiff Irene Verrio was 20 years of age at the time of trial and was represented by a guardian *ad litem*, E. J. Berger, and he has since reached his majority. At all times material hereto, plaintiffs were employed as seamen aboard the defendant vessel, M/V JANE D.

2. Defendant vessel, M/V JANE D., is of wood construction, oil screw, registered length 105.7 feet, breadth 18.4 feet, depth 10.3 feet, 121.04 gross tons and 85 net tons. At all times material hereto it was issued a Consolidated Certificate of Enrollment and Yacht License, dated January 12, 1966, by the United States Treasury Department, Miami, Florida.

3. Defendant, Rehavam Adiel, also known as Ray Adiel, is a citizen of the United States and a resident of Miami, Florida, and at all times material hereto was the sole stockholder and president of Inter America Transportation Corporation. He was named as master in the defendant vessel's documentation; he has a

bachelor's and a master's degree in education as a graduate of Columbia University Teachers College and was a school principal for 10 years but is not a navigator or seaman or licensed mariner. At a pretrial hearing he was granted leave by the Court to answer the complaint in *forma pauperis*.

4. Defendant Inter America Transportation Corporation is a corporation duly organized under the laws of Florida and at all times material hereto was the owner of defendant vessel, M/V JANE D., which vessel was its sole asset. At a pretrial hearing, it was granted leave by the Court to answer the complaint in *forma pauperis*.

5. This is a case of admiralty and maritime jurisdiction. The vessel was duly arrested and pursuant to an Order of this Court in another case pending was condemned and sold by the United States Marshal and the proceeds remaining are in the registry of this Court.

6. The contracts of employment on the M/V JANE D. were made orally between the plaintiffs and Rehavam Adiel and no articles were signed. Adiel conducted all of the business of arranging for the repairs of the vessel and employment of personnel.

7. In addition to the plaintiffs and Adiel there were on board one Juan Suarez who was a "pusher" or "straw boss" until sailing time when he became designated as Captain or navigator, and one John Tsimekles, who was a ships' broker in Miami, Florida. Mr. Tsimekles had not intended to be a member of the crew, but as the vessel was only going to Barranquilla, about a hundred miles coastwise, he decided to go along; and as he had had coast guard experience he was designated as second mate. All of this was done orally and seems to have been only for the trip to Barranquilla.

8. The vessel had arrived in tow to Cartagena, Columbia on March 4, 1966 and remained there undergoing repairs until the early morning of September 18, 1966, when it sailed for Barranquilla, Columbia after receiving clearance from the port authorities at Cartagena. She was to undergo additional repairs on arrival at Barranquilla. At all times she was under the U. S. flag although she flew the Columbian flag in Cartagena as a courtesy.

9. At various times during the stay at Cartagena, Mr. Adiel employed the eight plaintiffs, and on the night of September 17, 1966 it was agreed between the parties that they should be paid up through September 30, 1966 so that the crewmen would have money to give to their families and for other obligations. Their pay periods had been weekly, usually by checks, but as they were sailing, the advancements were agreed to and the plaintiffs came to the bridge of the yacht where they were paid in checks and cash. The payments were made in the evening and each receipt was dated September 17, 1966 and was witnessed by John N. Tsimekles who signed all of them, and they were signed by the plaintiffs. Six of the receipts are in evidence, but those signed by Martin Pastrana and Jorge Jiraldo are missing.

10. From the receipts and the testimony it appears that they were all paid through September 30, 1966 and that their job designations and rates of pay per week were as follows:

| | | |
|---|---|---|
| Orano Galindo Forbes, Chief Engineer | $625 Columbian Pesos | |
| Ovando Nelson, cook | 150 | " " |
| Eusebio Murrillo, deckhand | 150 | " " |
| Guillermo Doria, electrician | 160 | " " |
| Alberto Ospina, deckhand | 150 | " " |
| Irene Berrio, deckhand | 150 | " " |
| Martin Pastrana | 135 | " " |
| Jorge Jiraldo | 135 | " " |

11. After leaving Cartagena at about 1 or 2 o'clock in the morning of September 18, 1966 the yacht's engines broke down and she drifted until taken in tow by the SS San Antonio, and she arrived in tow at Cristobal, C. Z. on September 29, 1966.

12. This action was filed on October 5, 1966, and the vessel was arrested and the crew was removed on that date by the Marshal of this Court and placed in the hands of the immigration authorities where they remained until the trial of this action.

13. During the days when the ship was drifting and after its arrival in port the plaintiffs entered into a conspiracy to try to collect high wages and overtime and proceeded with this action based upon such claims. The police investigation together with the contradictory statement of plaintiff Berrio, and the testimony of the witnesses for the defendant are convincing however, and their stories of high wages promised and exhorbitant tales of overtime work are not accepted nor believed by this Court.

## CONCLUSIONS OF LAW

1. This Court has jurisdiction of the case and the questions involved.

2. The plaintiffs are entitled to recover of the defendants or either of them their wages for the first five days in October, 1966, at the rates paid them under their oral contract with the defendant Rehavam Adiel as shown in finding of fact number "10" above, together with interest at 6% per annum from the date of the judgment until paid.

3. The plaintiffs are not entitled to recover overtime as there is no convincing evidence that they worked any overtime hours.

4. The plaintiffs are entitled to their costs of repatriation and subsistence during travel. These expenses may have been borne by the Canal Zone Government or Columbia, if so, then these sums should not be paid to the plaintiffs, and an additional order can be drawn to conform to the circumstances.

5. The plaintiffs are entitled to recover their costs herein expended and the costs as well as the wages shall be paid from the monies in the Court registry realized from the sale of the vessel. The cost of the preparation of the transcript of the testimony taken herein which was ordered by the Court shall be paid to the Court Reporter from these monies also.